IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

M.G., L.J., F.C., and M.C.,

      Plaintiffs,

v.                                          CV 13-23 KG/WPL

DAVID C. YOUNG,
ROBERT T. SMITH,
JOSEPH R. HUDSON,
MICHAEL CALLAWAY,
RAYMOND D. SCHULTZ,
in their individual capacities, and
THE CITY OF ALBUQUERQUE,

      Defendants.

MEMORANDUM OPINION AND ORDER

The Plaintiffs claim that, in 2007 and 2008, they were illegally arrested and prosecuted for criminal solicitation by Defendant David Young. Young, a civilian employee of the Albuquerque Police Department ("APD") and a member of the APD's Reserve Officer Corps, misrepresented himself as a detective or police officer during these prosecutions. The Plaintiffs bring claims against Young for unlawful seizure, excessive force, procedural and substantive due process violations, and malicious prosecution. The Plaintiffs also bring claims against the other Defendants for supervisory and municipal liability and for torts under the New Mexico Tort Claims Act. Further, the Plaintiffs request injunctive relief.

The Defendants have filed three motions to dismiss and three motions for partial summary judgment.[1] All parties consented to have me rule on these motions. (Doc. 112.)  I need

---

[1] The motions include the following: Defendants' Motion to Dismiss No. I: Dismissal of Plaintiffs' Fourteenth Amendment Substantive and Procedural Due Process Claims on the Basis of Qualified Immunity and State Law Negligence Claims (Doc. 21); Defendants' Motion to Dismiss No. II:

not address all the issues raised in these motions. Defendants' Motion to Dismiss No. II must be granted because, except for Plaintiffs' claims for malicious prosecution, Plaintiffs have failed to file their claims within the applicable statute of limitations. As to the malicious prosecution claims, summary judgment for Defendants is appropriate because Plaintiffs have failed to show that their criminal cases were terminated in their favor. Accordingly, I dismiss all claims brought in this case, except Count XXIII for injunctive relief, with prejudice. The four remaining motions are MOOT.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs M.G., L.J., and F.C. filed a Complaint in this case on January 9, 2013. On November 14, 2013, the original Plaintiffs, along with newly added M.C., filed an Amended Complaint. Plaintiffs allege individual-capacity claims against David Young, a civilian employee and Reserve Officer for the APD; Robert Smith, a Sergeant or Lieutenant in the Special Investigations Division of the APD; Joseph Hudson, a Commander or Commanding Officer in the Special Investigations Division of the APD; Michael Callaway, a Deputy Chief of the APD; and Raymond Schultz, a Deputy Chief or Chief of the APD. Plaintiffs also presented allegations against the City of Albuquerque.

Young began working for the City of Albuquerque in 1998 as a civilian Fleet Manager of the APD Special Investigations Division. In or around 2005, Young also began serving as a

---

Dismissal of Plaintiffs' Complaint Based upon Plaintiffs' Failure to File Within the Applicable Statute of Limitations (Doc. 22); Defendants' Motion to Dismiss No. III: Dismissal of Plaintiffs' Supervisory Liability Claims for Failure to State a Non-Conclusory Claim (Doc. 48); Defendants' Motion for Partial Summary Judgment No. I on Counts XVII, XVIII, XIX and XX of Plaintiffs' Complaint Alleging Malicious Prosecution Claims Against Defendant Young (Doc. 78); Defendant Officers' [David Young, Robert Smith, and Joseph Hudson] Motion for Partial Summary Judgment No. II on Counts I, II, III, and IV of Plaintiffs' Complaint Alleging Fourth Amendment Illegal Seizure Claims Against Defendant Young (Doc. 79); and Defendant Officers' Motion for Partial Summary Judgment No. III on Counts V, VI, VII, and VIII of Plaintiffs' Complaint Alleging Fourth Amendment Excessive Force Claims Against Defendant Young (Doc. 80).

member of the APD's Reserve Officer Corps. A Reserve Officer is a "part-time civilian volunteer who has police authority while on duty and under the supervision of a fulltime officer." (Doc. 74 at 5.) Duties of a Reserve Officer do not include holding persons in custody, maintaining public order, or making arrests. Plaintiffs allege that Defendants had an official policy, custom, or practice of treating Young as a salaried detective and police officer and that Young held himself out as a detective and police officer, even though he was not qualified for such a position.

According to the Amended Complaint, on November 28, 2007, Young seized and detained M.G. Young then charged M.G. with criminal solicitation. M.G. asserts that, during a brief conversation between the two, she did not offer to perform a sex act for hire. In the criminal complaint, Young listed his title as "Det." or "detective." M.G. was convicted of the charges in 2008. (Doc. 74 at 8.) The Amended Complaint listed the same facts for F.C., L.J., and M.C., except that F.C. was seized on March 5, 2008, and convicted in 2008; L.J. was seized on March 29, 2008, and convicted in 2008; and M.C. was seized on August 15, 2007,[2] and convicted in August 2007.

Plaintiffs allege that Young submitted for and received overtime pay for the times during which he seized the Plaintiffs. They contend that Young participated in many seizures and filed at least twenty criminal complaints from May 2006 to August 2009. Young purportedly lured women into his unmarked vehicle, often made inappropriate physical contact with the women, and then charged them with prostitution or criminal solicitation.

In 2009, the Albuquerque Journal published several newspaper articles about Young performing the work of a police officer and receiving overtime for such work, despite not being a

---

[2] While the Amended Complaint lists a date of August 1, 2007, the criminal complaint states that the arrest date was August 15, 2007. (Doc. 78 Ex. Q.)

certified law enforcement officer. Each of the articles noted that Young specialized in arresting prostitutes. The APD opened an investigation into the facts surrounding the articles. The articles are dated August 19, 20, 21, and 24, 2009.

On May 16, 2011, attorney Paul J. Kennedy filed a Petition for Relief from Judgment in Lieu of Writ of Error Coram Nobis Under Rule 1-060(B) NMRA 2011 ("Petition"), with the State of New Mexico and City of Albuquerque as respondents. Kennedy purported to file the petition on behalf of the Plaintiffs and nine other women who pleaded guilty to criminal solicitation after being arrested and prosecuted by Young. The Petition requested that the judgments and sentences against the women be vacated on the basis that Young abused and misrepresented his authority, resulting in a fraud upon the court and the withholding of exculpatory evidence. M.G., L.J., and F.C. attached affidavits to their response to Motion to Dismiss No. II, swearing under oath that they first saw the Petition on November 15, 2012; that they never met any attorney or other representative connected with the drafting of the Petition; and that they were never contacted about the Petition and never gave permission to include their names in the Petition.

On January 11, 2012, the Second Judicial District Court of the State of New Mexico entered a stipulated order granting relief from judgment to the women named in the Petition. The court set aside the women's guilty pleas, vacated the respective judgments and sentences, and dismissed their cases with prejudice.

Plaintiffs assert multiple claims in their Amended Complaint. In Counts I-IV, Plaintiffs allege that Young violated their Fourth and Fourteenth Amendment rights against unlawful seizure by seizing them without a warrant or probable cause to believe that they had committed or were committing a crime. In Counts V-VIII, Plaintiffs assert that Young violated their Fourth

and Fourteenth Amendment rights against excessive force by using physical force against all four of them, and with respect to M.G., L.J., and M.C., "placing his hand on [Plaintiffs'] bare breast[s] and causing [Plaintiffs] to place [their hands] on his bare penis and genitals." (Doc. 74 at 14-16.) In Counts XI-XII, Plaintiffs contend that Young deprived them of liberty without procedural due process in violation of their Fourteenth Amendment rights by misrepresenting his position and authority. In Counts XIII-XVI, Plaintiffs allege that Young deprived them of substantive due process through unlawful physical confinement of all four of them and the intrusion of the bodily integrity of M.G., L.J., and M.C., in violation of their Fourteenth Amendment rights. In Counts XVII-XX, Plaintiffs bring a 42 U.S.C. § 1983 claim for malicious prosecution against Young for Plaintiffs' continued confinement and prosecution following their seizures without probable cause. In Count XXI, Plaintiffs assert § 1983 supervisory and municipal liability claims against Smith, Hudson, Callaway, Schultz, and the City of Albuquerque for knowingly allowing Young to misrepresent his position and authority and for failing to adequately train Young and control his work assignments. In Count XXII, Plaintiffs bring negligence claims against Smith, Hudson, Callaway, Schultz, and the City of Albuquerque for failing to exercise reasonable care for the safety of Albuquerque citizens by not executing, enforcing, and monitoring safeguards to protect citizens from persons, such as Young, who misrepresent their authority. Plaintiffs also contend that the City of Albuquerque is vicariously liable under the doctrine of respondeat superior for the acts or omissions of Smith, Hudson, Callaway, and Schultz in the scope of their employment as supervisory employees. Finally, in Count XXIII, Plaintiffs request injunctive relief in the form of expunging all arrest records and records of criminal proceedings arising from Young's arrest and prosecution of Plaintiffs, along with costs and fees.

**STANDARDS OF REVIEW**

### I.      Rule 12(b)(6) Dismissal

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. Without weighing the evidence, the court must evaluate whether it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotations omitted) (alteration in original). In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief. *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted).

While the complaint need not include "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The factual allegations must also suffice to "inform the defendants of the actual grounds of the claim against them," with the degree of specificity required depending on the nature of the complaint. *Robbins*, 519 F.3d at 1248 (citations omitted).

### II.     Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

6

56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted).

DISCUSSION

## I.      Statute of Limitations

In their Motion to Dismiss No. II, Defendants argue that they are entitled to dismissal of all § 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed to file their Complaint within three years of the dates they were allegedly injured by the Defendants. Further, Defendants argue that they are entitled to dismissal of all state law claims because Plaintiffs failed to file their Complaint within two years of the dates they were allegedly

injured by Defendants. Defendants assert that M.G. was allegedly injured on November 28, 2007; that F.C. was allegedly injured on March 5, 2008; and that L.J. was allegedly injured on March 29, 2008—all dates of arrest. Yet, Defendants point out, Plaintiffs did not file their Complaint until January 9, 2013.

Defendants contend that Plaintiffs knew or had reason to know that Young had allegedly violated their constitutional rights when they were arrested and that Young further violated their constitutional rights when they were incarcerated and charged with prostitution. With regard to Plaintiffs' state law negligence claims based on respondeat superior, Defendants contend that the claims accrued when Plaintiffs were arrested by Young.

Plaintiffs argue that Defendants are not entitled to dismissal of their claims because the claims did not accrue until Plaintiffs had a present and complete cause of action in May 2011 upon the filing of the Petition. Specifically, Plaintiffs contend that they did not have a "clear and present" cause of action until it became apparent, through the filing of the Petition in May 2011, that Young lacked police powers. (Doc. 39 at 4.) Plaintiffs assert, "This is the first public document that would have identified the Plaintiffs by name and informed them of their harm since it named them as Plaintiffs and made specific allegations against Defendant Young." (*Id.* at 5.) "This was the first public act that would have given the Plaintiffs notice of a present and complete cause of action against Defendant Young." (*Id.*) Plaintiffs did not have a cause of action for Young's alleged physical invasions at the time of the alleged touching, Plaintiffs argue, because Plaintiffs were given the impression that Young's actions were officially sanctioned when he filed criminal complaints. Finally, with regard to their malicious prosecution claims, Plaintiffs contend that these claims did not accrue until the criminal proceeding was terminated in Plaintiffs' favor—here, January 2012, pursuant to a stipulated order.

Plaintiffs also assert that equitable tolling or estoppel applies to their claims due to fraudulent concealment. They cite *Armijo v. Regents of the Univ. of New Mexico*, 704 P.2d 437 (N.M. Ct. App. 1984), and argue that "the fact that the Plaintiffs' [sic] knew there was something wrong with their arrests did not give them a cause for action since the very concealment by Young through affirmative misrepresentations and failure to be truthful with the Court concealed that he was the cause of their injuries." (Doc. 39 at 8.) Plaintiffs cite *Hagen v. Faherty*, 66 P.3d 974 (N.M. Ct. App. 2003), and contend that they are entitled to equitable estoppel because no reasonable person could have concluded that Young was merely a civilian employee.

Defendants counter that Plaintiffs' claims do not completely rely on Young's status as a law-enforcement officer and that the claims therefore accrued regardless of knowledge of such status. Further, Defendants argue that Plaintiffs have not shown that they were unaware of Young's status until May 2011 or that they could not have discovered his status with reasonable diligence. Defendants assert that, with due diligence, Plaintiffs would have been aware of Young's status in August 2009, upon publication of articles in the Albuquerque Journal about Young's law-enforcement status. Defendants also assert that a similar complaint filed by other women on January 12, 2010, indicates that a reasonable person exercising due diligence would have learned of Young's law-enforcement status prior to January 12, 2010—likely upon publication of the articles in the Albuquerque Journal in August 2009.

Section 1983 does not contain a statute of limitations. Pursuant to *Wilson v. Garcia*, the statute of limitations for all § 1983 claims brought within a particular state is determined by the statute of limitations for personal injury claims in that state, as long as it is not inconsistent with federal law or policy. 471 U.S. 261, 266-67, 275-76 (1985). In New Mexico, the statute of limitations for personal injury actions is three years. N.M. STAT. ANN. § 37-1-8. With regard to

the New Mexico Tort Claims Act, the statute of limitations is two years. N.M. Stat. Ann. § 41-4-15(A).

Federal law governs accrual of a § 1983 claim. *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citations omitted). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quotation omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). In other words, "'accrual occurs when the plaintiff has a complete and present cause of action.'" *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1215 (10th Cir. 2014) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991). A plaintiff does not need to know the full extent of her injuries or know all of the evidence later relied on for a cause of action to accrue. *Indus. Constructors Corp.*, 15 F.3d at 969; *Baker v. Bd. of Regents of the State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). Nor must a plaintiff have "conclusive evidence of the cause of an injury" in order for a cause of action to accrue. *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). The Tenth Circuit found that where state and local law-enforcement officers burned much of a black neighborhood and killed residents during a riot, accrual of a cause of action was not delayed until the release of a detailed report decades later that increased the perceived culpability and responsibility of the officers in the riot. *Id.* at 1211-16.

A New Mexico Tort Claims Act claim accrues "regardless of whether or not the plaintiff is aware of the full extent of his or her injury. Once a plaintiff has discovered his or her injury

and the cause of that injury, the statute of limitations begins to run." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1216 (D.N.M. 2010) (quotations omitted). "A plaintiff's cause of action accrues when he or she understands the nature of his or her injury; that is, when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Id.* (quotation omitted). Further, "[i]t is not required that all the damages resulting from the negligent act be known before the statute of limitations begins to run." *Id.* (quotation omitted).

State law governs the tolling of § 1983 and New Mexico statutes of limitations. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). In New Mexico, the statute of limitations is tolled for fraudulent concealment where the plaintiff shows: "'(1) the use of fraudulent means by the party who raises the bar of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of reasonable diligence could not have known that he might have a cause of action.'" *Varnell*, 756 F.3d at 1214-15 (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993)). "[A] plaintiff must show that his ignorance of his cause of action was not the result of his lack of diligence, but was due to affirmative acts or active deception by the Defendant to conceal the facts giving rise to the claim." *Indus. Constructors Corp.*, 15 F.3d at 969 (citation omitted).

I address each set of claims, the relevant statute of limitations, and accrual. I then discuss whether equitable tolling or estoppel applies. The claims and their numbering are as set out in the Amended Complaint. While Motion to Dismiss No. II was filed as to the original three Plaintiffs, the arguments in the briefing apply equally to M.C. Therefore, I consider the motion to dismiss with respect to the statutes of limitations in the context of all four Plaintiffs.

Counts I through IV are § 1983 unlawful seizure claims. Plaintiffs allege that Young violated their Fourth and Fourteenth Amendment rights to be free from unreasonable seizure by seizing them without a warrant and without probable cause that they had committed or were committing a crime. M.C. was seized on August 15, 2007; M.G. on November 28, 2007; F.C. on March 5, 2008; and L.J. on March 29, 2008.

"Unreasonable seizures imposed without legal process precipitate Fourth Amendment false imprisonment claims." *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (citing *Wallace*, 549 U.S. at 389). In *Wallace*, the Court held that the plaintiff's § 1983 Fourth Amendment warrantless arrest claim accrued when the plaintiff appeared before a magistrate judge and was bound over for trial. 549 U.S. at 391-92.

Plaintiffs' argument that their claims did not accrue until May of 2011 upon the filing of the Petition is unpersuasive. Plaintiffs have provided no support for their proposition that a public document identifying them by name was required for them to have a complete and present cause of action. In this case, it is not apparent from the record when each Plaintiff appeared before a magistrate judge. However, the Amended Complaint alleges that M.C. was convicted of criminal charges in August of 2007; M.G. in 2008; F.C. in 2008; and L.J. in 2008. Accordingly, I can assume that each Plaintiff went before a magistrate judge before their dates of conviction. Given the three-year statute of limitations applicable to this § 1983 claim, M.C. therefore needed, absent equitable tolling, to file a complaint by August of 2010, and the remaining Plaintiffs needed to file a complaint by sometime in 2011.

Counts V through VIII are § 1983 excessive force claims. Excessive force claims are presumed to accrue on the day the force was applied. *Watkins v. Craft*, 455 F. App'x 853, 855 (10th Cir. 2012) (unpublished). Plaintiffs allege that Young violated their Fourth and Fourteenth

Amendment rights to be free from excessive force. The alleged excessive force occurred on the same dates of the alleged unlawful seizures. As such, M.C. therefore needed, absent equitable tolling, to file a complaint by August 15, 2010; M.G. by November 28, 2010; F.C. by March 5, 2011; and L.J. by March 29, 2011.

Counts IX through XII are § 1983 claims for the deprivation of liberty without procedural due process under the Fourteenth Amendment. Plaintiffs allege that, while causing the continued confinement and prosecution of the Plaintiffs, Young misrepresented his position and authority as an agent of the City of Albuquerque. Plaintiffs further allege that Young failed to properly notify them of his actual position and authority and other exculpatory evidence. These Counts appear to make some allegations that might support malicious prosecution claims against Young. Such claims are brought specifically in Counts XVII through XX and are discussed separately below. (Doc. 74 at 26-29.) Without assessing the propriety of Fourteenth Amendment procedural due process claims in this case, I focus on Plaintiffs' allegations of Young's misrepresentations about his position and authority.

In *Brooks v. Newton-Embry*, the court found that a habeas petitioner could have, through due diligence, discovered in the local newspaper the reason for her trial judge's inattentiveness at such a time that the statute of limitations for filing her petition had run. No. 10-CV-0072-CVE-PJC, 2010 WL 2867970, at *4 (N.D. Okla. July 20, 2010) (unpublished); *see Indus. Constructors Corp.*, 15 F.3d at 969 (noting that the cause of action accrues when the plaintiff knows or has reason to know of her injury).

Likewise, in the present case, a cause of action based on Young's alleged misrepresentations would have accrued by August 2009, upon publication of relevant articles in the Albuquerque Journal about Young's lack of certification as a law-enforcement officer. A

person exercising reasonable diligence should have been aware at that time of Young's misrepresentations. As such, claims pertaining to Young's misrepresentations must have been filed within three years of August 2009—by August 2012.

Counts XIII through XVI are § 1983 claims for the deprivation of substantive due process under the Fourteenth Amendment through unlawful physical confinement of all four Plaintiffs and the intrusion on the bodily integrity of M.G., L.J., and M.C. M.G., L.J., and M.C. allege that Young touched their bare breasts and caused them to touch his genitals for no legitimate law-enforcement objective. Plaintiffs also allege that they were unlawfully confined through Young's alleged misrepresentations regarding his position and authority and his failure to notify Plaintiffs of such misrepresentations and other exculpatory evidence. I do not examine the propriety of bringing a Fourteenth Amendment substantive due process claim in this case. However, I have already determined the accrual dates, absent tolling, of the alleged unlawful seizures and physical contact between Young and Plaintiffs. In addition, I have found that a claim arising from Young's alleged misrepresentations would have accrued in August 2009, upon publication of pertinent articles in the Albuquerque Journal. Accordingly, without equitable tolling, Plaintiffs' substantive due process claims are outside the statute of limitations.

Counts XVII through XX are § 1983 claims for malicious prosecution. "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). "Because the statute of limitations does not start running before the elements of a claim are satisfied, the statute of limitations for [malicious prosecution] cannot start until the plaintiff has achieved a favorable result in the original action." *Mondragon*, 519 F.3d at 1083.

Plaintiffs allege that their continued confinement and prosecution following their seizures constituted malicious prosecution. They also assert that their cases were terminated in their favor. I do not examine at this juncture whether Plaintiffs' criminal proceedings were terminated in their favor. It is undisputed that the state court vacated Plaintiffs' judgments and sentences on January 11, 2012. Therefore, assuming without deciding that Plaintiffs' criminal proceedings were terminated in their favor, Plaintiffs would have had until January 11, 2015, to file their Complaint. The Complaint, filed January 9, 2013, was within the statute of limitations for a claim of malicious prosecution.

Count XXI is a § 1983 supervisory and municipal liability claim against Smith, Hudson, Callaway, Schultz, and the City of Albuquerque. Plaintiffs allege that these supervisors and the City knowingly failed to act, allowing Young to continue misrepresenting his position and authority by seizing and detaining individuals, booking them into detention facilities, filing criminal complaints and other documents in court, serving documents during discovery and other criminal proceedings, and prosecuting criminal charges. Plaintiffs assert that these Defendants' alleged failure to adequately train Young, failure to control his work assignments,  wrongful retention, failure to comply with appropriate procedures, and failure to prevent Young's alleged misconduct constituted a custom, practice, and policy of deliberate indifference of Plaintiffs' Fourth and Fourteenth Amendment rights. All claims against the supervisors and the City dealing with the activities leading up to each Plaintiffs' initial appearance before a magistrate judge accrued no later than August 2009, with the publication of the Albuquerque Journal articles, and are therefore outside of the statute of limitations. At that time, a person with reasonable diligence should have known of possible liability of the City of Albuquerque or Young's supervisors. Further, neither a municipality nor a supervisor may be held liable for the actions of an employee

15

where there is no cause of action for a constitutional violation. *See Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1154 (10th Cir. 2001) ("[W]e consider whether a municipality can be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights. We conclude . . . that a municipality cannot be held liable under these circumstances."); *Myers v. Koopman*, Civil No. 09-cv-02802-REB-MEH, 2011 WL 650328, at *6 (D. Colo. Feb. 11, 2011) (unpublished) ("A plaintiff may establish [a] § 1983 claim against a defendant-supervisor by showing: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; (2) the policy caused the complained of constitutional harm . . . .").

On the other hand, Plaintiffs' claims regarding wrongful retention, insufficient training, failure to supervise, failure to comply with appropriate procedures, and failure to prevent misconduct to the extent they deal with the period after Plaintiffs' appearances before a magistrate judge—the institution of legal process—would have accrued at the same time as any malicious prosecution cause of action on January 11, 2012. *See Birdsong v. Unified Gov't of Wyandotte*, No. 13-2090-JAR, 2014 WL 3361720, at *4 (D. Kan. July 9, 2014) (unpublished) ("[T]he claims for malicious prosecution that challenge the legal process associated with the charges at issue in this case, and the supervisory liability and official capacity claims associated with those malicious prosecution claims, accrued on the dates of dismissal of the case . . . ."); *Calia v. Morrison*, 54 F.3d 787, 1995 WL 311750, at *2 (10th Cir. 1995) (unpublished table decision) ("[Plaintiff's] claims for malicious prosecution and the county's unlawful policy/failure to supervise are in a somewhat different category. These claims depend on proof that [plaintiff] was maliciously prosecuted."). Thus, municipal and supervisory liability claims to the extent they are based on malicious prosecution are timely filed.

Count XXII is a state negligence claim against Smith, Hudson, Callaway, Schultz, and the City of Albuquerque. Plaintiffs allege that these defendants failed to exercise a duty of reasonable care "by, among other things, failing to execute, failing to enforce, and failing to monitor compliance with physical, procedural, and regulatory safeguards to protect citizens from violation of their civil and constitutional rights by [Young]." (*Id.* at 31.) Plaintiffs also allege that the City of Albuquerque is vicariously liable for Young's acts under the doctrine of respondeat superior. (*Id.* at 32.) Count XXII is a purely state claim and does not implicate § 1983 malicious prosecution. As such, the Plaintiffs should have known, with reasonable diligence as of the August 2009 publication of the Albuquerque Journal articles, that these Defendants' potential negligence was a cause of their alleged constitutional injuries. *See Lymon*, 728 F. Supp. 2d at 1216. Plaintiffs failed to file their Complaint within the two-year statute of limitations. N.M. STAT. ANN. § 41-4-15(A).

Plaintiffs contend that fraudulent concealment kept them from learning that they had causes of action until the filing of the Petition in May 2011. Defendants argue that Plaintiffs have not proven that they did not have actual or constructive knowledge of Young's law-enforcement status.

"Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace*, 549 U.S. at 396. All of Plaintiffs' claims, other than malicious prosecution and those municipal/supervisory liability claims potentially tied to malicious prosecution, accrued by the time the Albuquerque Journal published articles about Young in August 2009. Plaintiffs' failure to file the Complaint until January 9, 2013, reveals a lack of diligence on the part of the Plaintiffs, regardless of any active concealment of facts by Defendants. *See Indus. Constructors Corp.*, 15 F.3d at 969 (citation omitted).

Plaintiffs' citation to *Armijo* is also distinguishable. *See* 704 P.2d at 441. In *Armijo*, the court noted that "New Mexico follows the rule that where a confidential relationship exists, as between a physician and patient, a duty arises to disclose all material facts relating to the patient's treatment. . . . [W]here there exists a duty to speak in a confidential relationship, mere silence constitutes fraudulent concealment." *Id.* (quotation and citations omitted). In the present case, there was no confidential relationship between Young and Plaintiffs.

Plaintiffs also cite *Hagen* to support their argument that this Court should apply equitable estoppel in this case. 66 P.3d 974. In New Mexico,

> The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Lopez v. State*, 930 P.2d 146, 151 (N.M. 1996) (citations omitted). In *Hagen*, the court estopped a University of New Mexico Hospital ("UNMH") doctor from asserting a two-year statute of limitations for public employees under the New Mexico Tort Claims Act where the doctor, based on an agreement between UNMH and a private medical center, worked as a temporary fill-in doctor at the private medical center. 66 P.3d at 975-76. The court determined that no reasonable person would have concluded that the doctor was an employee of UNMH rather than the private medical center. *Id.* at 976.

Plaintiffs argue that, likewise, no reasonable person would have concluded that Young was a civilian employee of the APD rather than a certified law-enforcement officer. However, a required element of equitable estoppel is missing in this case: Plaintiffs did not have a "[l]ack of

18

knowledge and of the means of knowledge of the truth as to the facts in question." *Lopez*, 930

P.2d at 151. By the August 2009 publication of the Albuquerque Journal articles, Plaintiffs had

the means to know, and should have known, that Young was a civilian employee of the APD.

Even so, Plaintiffs waited more than three years to file their Complaint. Therefore, equitable

estoppel does not apply in this case.

Because Plaintiffs filed Counts I through XVI and XXII outside the statute of limitations,

these claims are dismissed with prejudice. Plaintiffs' malicious prosecution claims were timely,

assuming favorable termination of their cases. Count XXI for supervisory and municipal liability

under § 1983 is timely with respect to claims relating to malicious prosecution, but untimely for

all other claims, which are dismissed with prejudice.

## II.     Malicious Prosecution

Defendants move for partial summary judgment on Plaintiffs' malicious prosecution

claims on the basis that Plaintiffs' cases did not terminate in their favor and were not indicative

of Plaintiffs' innocence. Defendants argue that neither the Petition nor stipulated order vacating

the judgments and sentences against Plaintiffs referenced the merits of the criminal proceedings

against them. Further, Defendants assert that Plaintiffs never asserted anywhere in the record

their factual innocence.

A § 1983 malicious prosecution claim requires the following: "(1) the defendant caused

the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor

of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or

prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citation omitted). An action is

terminated in favor of a plaintiff if it "indicate[s] the innocence of the accused." *Id.* at 803

(quotation omitted); *see also* Restatement (Second) of Torts § 660 cmt a. (1977) ("Proceedings are 'terminated in favor of the accused[]' . . . only when their final disposition is such as to indicate the innocence of the accused.").

Defendants cite to *Rhodes v. Mabus* for the proposition that the termination of a case on procedural grounds is not sufficient to constitute a favorable termination. 676 F. Supp. 755, 759 (S.D. Miss. 1987). The court in *Rhodes* stated:

> It has been held that the quashing of an indictment is a termination in favor of the accused. *See* 52 Am.Jur.2d *Malicious Prosecution* § 32 (1970). However, applying the principles set forth in the above-cited cases, such would not be the case where the indictment was quashed on procedural grounds and not in such a way as to indicate the innocence of the accused or the lack of probable cause for his prosecution. The circuit court's quashing of the indictment was expressly based on what the court held was an improper communication with the grand jurors . . . . The quashing of the indictment on that basis was not a termination on the merits and did not indicate the innocence of Rhodes or the lack of reasonable grounds for his prosecution. Therefore, Rhodes has failed to establish that the proceedings terminated in his favor.

*Id.* (internal citation omitted). Further, Defendants cite to *Wilkins* for the proposition that "if . . . evidence was only suppressed on technical grounds having no or little relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence." *Wilkins*, 528 F.3d at 804 (citation and quotation omitted). Finally, Defendants cite to *Dobiecki v. Palacios*, which found that the dismissal of a criminal case on the basis of failure to give *Miranda* warnings and the subsequent suppression of a confession obtained without such warning was not a favorable termination, 829 F. Supp. 229, 235 (N.D. Ill. 1993), and *Padilla v. Miller*, which found that the plaintiff could not sue for malicious prosecution where his criminal case was dismissed after evidence sufficient to establish probable cause was suppressed due to the fruit of the poisonous tree doctrine, 143 F. Supp. 2d 453, 478 (M.D. Pa. 1999).

Plaintiffs concede that a favorable termination must indicate the Plaintiffs' innocence and that convictions set aside through procedural mechanisms are not indicative of innocence. However, Plaintiffs argue that the Court must look at the circumstances of the termination of Plaintiffs' cases. Plaintiffs contend that where unreliable evidence is suppressed, and the case is therefore abandoned, the dismissal is indicative of innocence. (Doc. 84 at 6-7) (citing *Wilkins*, 528 F.3d at 804-05.) Plaintiffs also assert that the grounds for vacating the judgments and sentences dealt with the trustworthiness of Young and thus the evidence brought by him. Plaintiffs argue, "the evidence that Defendant Young was not a police officer was exculpatory and indicative of innocence since the prosecution could not have proved its case without his testimony." (*Id.* at 8-9.)

Plaintiffs have the burden of proving that they received a favorable termination. *Wilkins*, 528 F.3d at 803 (quotation omitted). "Where the case is disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused." *Dobiecki*, 829 F. Supp. at 235. While Plaintiffs focus on the trustworthiness of Young, they do not argue that they are innocent of the charges that were brought against them. In fact, all four Plaintiffs pleaded guilty to prostitution. The Petition argued that the judgments and sentences should be overturned as a result of fraud on the court by Young, who misrepresented his position and authority—an issue separate from whether Plaintiffs are innocent. (Doc. 39 at 34.) The subsequent stipulated order overturning the judgments and sentences does not explain the reasoning for overturning the judgments and sentences. Nowhere in the record is there any evidence to indicate the Plaintiffs' innocence.

Construing the facts in the light most favorable to the Plaintiffs, I conclude that because Plaintiffs have failed to show that the terminations of their criminal cases indicated their

innocence, Defendants are entitled to summary judgment as to Counts XVII through XX for malicious prosecution as well as Count XXI for supervisory and municipal liability, to the extent that this Count involves malicious prosecution claims. These Counts are dismissed with prejudice.

### III.    Remaining Motions and Outstanding Claims

Because all claims discussed in the remaining four motions to dismiss and motions for partial summary judgment have been dismissed, I find that these motions are hereby MOOT.

None of the motions to dismiss or motions for partial summary judgment addressed Count XXIII for injunctive relief. As such, Count XXIII remains the only claim outstanding in this case.

### CONCLUSION

In accordance with this Memorandum Opinion and Order, I hereby find:

1) Defendants' Motion to Dismiss No. II: Dismissal of Plaintiffs' Complaint Based upon Plaintiffs' Failure to File Within the Applicable Statute of Limitations (Doc. 22) is GRANTED IN PART AND DENIED IN PART;

2) Defendants' Motion for Partial Summary Judgment No. I on Count XVII, XVIII, XIX and XX of Plaintiffs' Complaint Alleging Malicious Prosecution Claims Against Defendant Young (Doc. 78) is GRANTED;

3) Partial summary judgment is GRANTED in favor of Defendants to the extent that claims within any Counts, including but not limited to Counts XI through XII and XXI, involve malicious prosecution;

4) Defendants' Motion to Dismiss No. I: Dismissal of Plaintiffs' Fourteenth Amendment Substantive and Procedural Due Process Claims on the Basis of Qualified Immunity and

State Law Negligence Claims (Doc. 21); Defendants' Motion to Dismiss No. III: Dismissal of Plaintiffs' Supervisory Liability Claims for Failure to State a Non-Conclusory Claim (Doc. 48); Defendant Officers' Motion for Partial Summary Judgment No. II on Counts I, II, III, and IV of Plaintiffs' Complaint Alleging Fourth Amendment Illegal Seizure Claims Against Defendant Young (Doc. 79); and Defendant Officers' Motion for Partial Summary Judgment No. III on Counts V, VI, VII, and VIII of Plaintiffs' Complaint Alleging Fourth Amendment Excessive Force Claims Against Defendant Young (Doc. 80) are MOOT;

5) Counts I through XXII in the Amended Complaint are DISMISSED with prejudice; and

6) Count XXIII for injunctive relief in the Amended Complaint remains the only Count outstanding in this case.

IT IS SO ORDERED.

_William P. Lynch_

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.